**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

KEVIN WAYNE EDWARD EMERY                                    **PLAINTIFF**

v.                                              **CIVIL ACTION NO.: 3:22-cv-220-JMV**

COMMISSIONER OF SOCIAL SECURITY                            **DEFENDANT**

**<u>ORDER</u>**

This matter is before the court on Plaintiff's complaint [1] for judicial review of the Commissioner of the Social Security Administration's denial of a request for supplemental security income. The parties have consented to entry of final judgment by the United States Magistrate Judge, with any appeal to the Court of Appeals for the Fifth Circuit. Having considered the record, the administrative transcript, the briefs of the parties, and the applicable law, the undersigned finds the Commissioner's decision is not supported by substantial evidence and should be and is hereby **REVERSED AND REMANDED.**

**Statement of the Case**

Plaintiff, Kevin Wayne Edward Emery, filed a Title II application in the present matter on February 28, 2019. The claimant's date last insured was December 31, 2017 (Exhibit 11A). As a result, the claimant would not be entitled to a period of disability and disability insurance benefits under Title II of the Social Security Act because the claimant would not have disability insured status on the date of onset (20 CFR 404.130, 404.131, and 404.315). At the hearing, the claimant, through his representative, voluntarily elected to withdraw his request for hearing as it pertains to the application for a period of disability and disability insurance benefits. Thus, the claim for a period of disability and disability insurance benefits under section 216(i) and 223(a) of the Social

Security Act was dismissed, and the hearing proceeded only on claimant's application for supplemental security income.

After the agency denied Plaintiff's application initially and on reconsideration (Tr. 185-88, 191, 203-11), Plaintiff requested an administrative hearing, which ALJ George William Jenkins III held on December 16, 2020. Tr. 42-58, 217. The ALJ issued a fully favorable decision on January 6, 2021, finding that Plaintiff was disabled as of February 26, 2019, and entitled to both DIB and SSI. Tr. 154-59. On April 27, 2021, the Appeals Council remanded Plaintiff's case. Tr. 162-71.

The ALJ held a telephonic hearing on November 8, 2021. Present at the hearing were Plaintiff, his attorney Joe Morgan Wilson, and James B. Adams, an impartial vocational expert. The ALJ issued an Unfavorable Decision in this cause on January 19, 2022, finding that Plaintiff has not been under a disability within the meaning of the Social Security Act.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 26, 2019. At step two, the ALJ found that the Plaintiff had the following "severe" impairments: mild intellectual disability, traumatic brain injury (TBI), thoracic dysfunction, lumbar dysfunction, and obesity. At step three, the ALJ found that none of Plaintiff's impairments, either alone or in combination, met or equaled the criteria of an impairment at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listings).

The ALJ then found that claimant has the RFC to:

perform sedentary work as defined in 20 CFR 416.967(a) except: Occasionally climb ladders, ropes or scaffolds; Occasionally climb ramps or stairs; Occasionally kneel, crouch, crawl, balance and stoop; No more than Occasional Overhead reaching with Both Upper Extremities; avoid all exposure to hazardous machinery and unprotected heights; Individual capable of performing simple, routine tasks, and maintaining attention, concentration, persistence or pace to stay on task for 2 – hour periods during a normal 8 - hour day, as required to perform such tasks; Individual requires a low stress work setting, which is further defined as work that

> is not production pace or quota based, rather a goal oriented job primarily dealing with things as opposed to people; Limited to jobs with no driving requirement; able to perform the job, either sitting or standing, alternating every 30 minutes (such as in bench work occupations).

Tr. 24.

At step four, the ALJ found that the Plaintiff was unable to perform his past relevant work as a Diesel mechanic helper, DOT 625.684-010, SVP 4, medium, performed heavy and Heavy/Giant tire repair, DOT 915.684-010, SVP 3, heavy, occasionally very heavy. Tr. 29. The Plaintiff was found to have a high school education. At step five, the VE testified that given all of these factors the individual would be able to perform the requirements of the following 1. Puller or turner, DOT 782.687-030, SVP 1, 36,000 jobs available nationally; 2. Patcher, DOT 703.687-010, SVP 2, 38,000 jobs available nationally; and 3. Dial marker, DOT 729.684-018, SVP 2, 24,000 jobs available nationally. However, based on the ALJ's review of the jobs provided by the vocational expert, he found that job number 2 (Patcher, DOT 703.687-010, SVP 2, 38,000 jobs available nationally) is outside of the limitations provided in his RFC hypothetical. Therefore, he removed that job, Patcher, DOT 703.687-010, from consideration. However, he found that the remaining two jobs can be performed by the claimant and there is sufficient jobs available nationally.

Thus, the ALJ found the Plaintiff not disabled from February 26, 2019, through the date of the decision. Plaintiff appealed, and the Appeals Council issued an Order affirming the decision on August 11, 2022.

**Discussion**

Plaintiff raises three issues: (1) whether the ALJ failed to honor the requirements of the Appeals Council remand of April 27, 2021; (2) whether the ALJ committed reversible error in

failing to evaluate listing 12.02; and (3) whether the ALJ erred in failing to properly consider SSR 96-9P as well as SSR 83-12. However, the Defendant addressed the issues as (1) whether the ALJ complied with the Appeals Council's remand order; (2) whether substantial evidence supports the ALJ's step three finding that Plaintiff did not meet or medically equal Listing 12.02; (3) whether substantial evidence supports the RFC; and (4) whether substantial evidence supports the ALJ's step five finding. Pl. Br. at 6-15. The Court finds that the case must be remanded due to the first issue, whether the ALJ complied with the Appeals Council's remand order.

**1) Alleged Failure to Comply with the Appeals Council's Remand Order**

As to the first issue, in the Appeals Council's remand order dated April 27, 2021, a portion of the order stated that upon remand, the Administrative Law Judge will: "If available, obtain evidence from a medical expert related to the nature and severity of and functional limitations resulting from the claimant's impairment (20 CFR 404.1513a(b)(2) and 416.913a(b)(2))." Tr. 168.

Plaintiff argues that while this Order did not specify whether Mr. Emery's mental or his physical impairments were to be reviewed, the ALJ erred by failing to call upon a medical expert to testify at the second hearing. While the requirement included the caveat "if available," Plaintiff argues that no medical expert is "available" until the Social Security Administration hires him/her and provides him/her medical records and asks him/her to render a medical opinion either by answering sworn interrogatories or appearing and testifying by telephone at a hearing.

20 C.F.R. § 416.1477(b) requires that the ALJ "shall take any action that is ordered by the Appeals Council." In its directive, the Appeals Council cited to 20 C.F.R. § 416.913a(b)(2), which provides that an ALJ "*may* also ask for medical evidence from expert medical sources." 20 C.F.R. § 416.913a(b)(2) (emphasis added). The government argues that the Appeals Council's inclusion of the term "if available," coupled with its citation to the regulations providing that an ALJ "may"

ask for medical expert evidence, indicates that the ALJ had discretion in obtaining medical expert testimony in this case. Tr. 168. The government also argues that multiple opinions were already available to the ALJ in this case, including Dr. Jim Adams' CE in December 2019, Tracy Swafford, M.Ed.'s psychological CE in February 2020, Pamela Buck's review and endorsement of Swafford's psychological CE, as well as review of the available evidence by State agency medical and psychological consultants.

However, the undersigned declines to take such a leap in this instance. At the hearing, there was substantial discussion by counsel for both parties regarding the term "available." Merriam-Webster Dictionary defines "available" as "accessible, obtainable." Was a medical expert accessible or obtainable here? We do not know because while the ALJ acknowledged at the outset of his opinion the Appeals Council's directive to obtain evidence from a medical expert, if available, the ALJ never found that a medical expert was not available. *See* Tr. 17. In fact, the word "available" is never mentioned in conjunction with medical testimony except for the following statements:

> The evidence available at the initial determination and the reconsideration was evaluated by State agency medical and psychological consultants. At a prior application, the State agency consultants concluded there was insufficient evidence to evaluate the claimant's function abilities (Exhibits 1A, 3A). This opinion is not consistent with, or supported by, the current record and is unpersuasive.

Tr. 27-28.

The Court declines to find substantial evidence here because to do so one would have to make multiple inferences. One would have to infer that *if* the ALJ found an opinion that said there was insufficient evidence persuasive, he must have also been of the opinion that there was sufficient evidence to evaluate the claimant's functional abilities. And if he found there was sufficient evidence, then perhaps the medical expert was unavailable. The Fifth Circuit has stated,

that an "ALJ does not need to comment on every piece of evidence, but only must build *an accurate and logical bridge between the evidence and the final determination. Id.*, citing *Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010) (emphasis added). There is no accurate and logical bridge in this instance. Put simply, the ALJ was directed by the Appeals Council to obtain medical expert testimony if available, and the ALJ never found that medical expert testimony was unavailable.

However, even if the ALJ failed to adequately develop the record, the case should not be reversed unless the claimant demonstrates that prejudice resulted from the alleged error. *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996). To demonstrate prejudice, the claimant must show that he "could and would have adduced evidence that might have altered the result." *Id.* at 728 (*citing Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)). In his reply brief, Plaintiff cites to his various medical issues and argues that without a full and fairly developed hearing, he was certainly harmed. [24] at 2-3. Here, the undersigned finds that Plaintiff has met this threshold, albeit by a small margin.

On remand, the ALJ is directed to specifically address whether a medical expert is available in accordance with the Appeals Council's order. If the ALJ finds that a medical expert is available, the ALJ should "obtain evidence from a medical expert related to the nature and severity of and functional limitations resulting from the claimant's impairment (20 CFR 404.1513a(b)(2) and 416.913a(b)(2))."

Although the Court does not find error in the remaining issues raised by Plaintiff, the Court finds it appropriate to address those briefly herein.

**2) Alleged Failure to Evaluate Listing 12.02**

As to the second issue, the Plaintiff argues that the ALJ failed to evaluate listing 12.02. At

step three, the burden of proof rests solely on the claimant. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); 20 C.F.R. § 416.920(a)(4)(iii). A finding that a claimant meets a Listing must be based on objective medical evidence, rather than conclusory assertions or the claimant's own statements. *Zebley*, 493 U.S. at 530 n.8; 20 C.F.R. § 416.925(c)-(d). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Zebley*, 493 U.S. at 530. It is the claimant's burden to show all the requirements of a listed impairment are met, not the Commissioner's to show an absence of the relevant criteria. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The ALJ's step three analysis spans over four pages. Tr. 20-24. While Plaintiff points out that Dr. Buck evaluated the domains for childrens' listing in her CE, her opinion is nevertheless relevant to determining Plaintiff's limitations with respect to the paragraph B findings. Tr. 630-31. Plaintiff also argues that the ALJ did not properly consider whether Plaintiff's impairments were equivalent to either Listing 12.02 or 12.05. [15] at 11-12. However, SSR 17-2p, 2017 WL 3928306, explains in cases where the ALJ believes that the evidence does not support a finding that the claimant medically equals a Listing, the ALJ is not required to cite specific evidence supporting his finding regarding medical equivalence. SSR 17-2p at *4. Rather, "a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding." *Id.* Here, the ALJ expressly found that Plaintiff's mental impairments, considered singly and in combination, do not meet *or medically equal* Listings 12.02 and 12.05. Tr. 22 (emphasis added). The ALJ therefore properly considered medical equivalence and complied with SSR 17-2p's articulation requirement, and the ALJ was not required to separately explain why Plaintiff's mental impairments did not medically equal Listing 12.02 or 12.05. Tr. 22-

23; SSR 17-2p at *4.

Furthermore, the ALJ stated that the RFC reflects the degree of limitation he found in the "paragraph B" mental function analysis. Thus, the undersigned finds that while this issue was not addressed perfectly by the ALJ, perfection is not required, and remand is not warranted because substantial evidence supports the ALJ's finding that the Plaintiff's mental impairments did not meet or medically equal Listings 12.02 and 12.05.

**3) Alleged Failure to Properly Consider SSR 96-9P and SSR 83-12**

As to the third issue, the Plaintiff argues that the ALJ erred in failing to properly consider SSR 96-9P as well as SSR 83-12. To the contrary, the government argues that the ALJ based his finding that Plaintiff could perform a reduced range of sedentary work on the credible medical, testimonial, and documentary evidence, and he did not rely exclusively or excessively on any one factor when he evaluated Plaintiff's RFC. Tr. 24-28. Instead, the government, in citing to the record, states that the ALJ properly considered a range of evidence, including the following: (1) the medical records, medical opinions, and prior administrative findings. Tr. 26-28; (2) Plaintiff's activities of daily living. Tr. 25-27; (3) the nature, location, duration, frequency, and intensity of Plaintiff's pain and other symptoms. Tr. 25-27 (noting that Plaintiff reported mid back and lower back pain and radiating leg pain); and (4) Plaintiff's functional limitations, including the need for a sit/stand option, which the ALJ addressed in the RFC. Tr. 24, 27-28; 20 C.F.R. § 416.929(c).

Arguing that the RFC is unsupported, Plaintiff cites SSR 96-9p, 1996 WL 374185 and suggests that the ALJ did not appreciate that a sit/stand option would erode the full range of unskilled sedentary work. But, as the government notes, the ALJ did not find that Plaintiff could perform the full range of sedentary work. Tr. 24. Rather, the ALJ included several additional limitations in the RFC, including the ability to perform the job either sitting or standing, and

alternating every 30 minutes. Tr. 24. SSR 96-9p provides that it "may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work." SSR 96-9p at *7. The undersigned finds that the ALJ did that here, as the VE identified specific positions and jobs numbers that an individual with Plaintiff's RFC, including a sit/stand option, could perform. Tr. 87-91.

### 4) Alleged Failure for VE's Testimony to Support Step Five Finding

The ALJ properly relied on the VE's testimony identifying jobs existing in significant numbers in the national economy available to an individual with Plaintiff's vocational profile and RFC. The VE testified that a hypothetical individual with the same age, education, past job experience, and RFC as the Plaintiff could perform work as a puller-through/turner, patcher, and dial marker. Tr. 90. The ALJ properly relied on the VE's testimony that Plaintiff could perform sedentary, unskilled work as a puller-through/turner and dial marker. Tr. 29-30, 90. Once the Commissioner finds that jobs in the national economy are available to Plaintiff, the burden of proof shifts back to Plaintiff to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). Plaintiff has not satisfied his burden.

As to Plaintiff's argument regarding overhead reaching, the VE testified that the DOT does not specifically address overhead reaching. Even if there were an implied or indirect conflict, on cross examination by Plaintiff's attorney, the VE confirmed that the identified sedentary jobs did not require overhead reaching. Tr. 93.

Although Plaintiff claims that puller-through/turner job requires being exposed to hazards, Pl. Br. at 14, the DOT provision associated with the puller-through/turner position shows that moving mechanical parts and high exposed places are "Not Present – Activity or condition does not exist." DOT 782.687-030, 1991 WL 680904. Here, Plaintiff has not demonstrated a definitive

conflict between the DOT and the VE's testimony regarding the need to avoid all exposure to hazardous machinery and unprotected heights. Further, the ALJ properly relied on the VE's testimony to find that a hypothetical individual restricted from jobs with exposure to hazardous machinery and unprotected heights could nevertheless perform other work as a puller-through/turner. Tr. 24, 29-30, 87-90. At most, the conflict Plaintiff alleges is implied, which he waived by not expressly developing this claim during the administrative hearing. Tr. 92-94; *See*, *Bailey v. Comm'r of Soc. Sec.*, 2020 WL 2812559, at *2 (N.D. Miss. 2020) (unpublished).

Plaintiff also argues that he cannot perform the dial marker position because he alleges that the position requires artistic skills which he does not possess, and because he alleges that this work conflicts with the ALJ's limitation that Plaintiff required a low stress work setting. Tr. 24; Pl. Br. at 14-15. However, both the VE and the DOT classify the dial marker position as having a specific vocational preparation of 2, which is consistent with unskilled work. Tr. 90; DOT 729.684-018, 1991 WL 679720; SSR 00-4p, 2000 WL 1898704, at *3. Again, Plaintiff has not shown a definitive conflict between the DOT and the VE's testimony.

Finally, Plaintiff argues that the VE's testimony regarding a sit/stand option conflicts with the DOT and that the ALJ did not account for reduced job numbers due to a sit/stand option. Pl. Br. at 15. No definitive conflict existed between the VE's testimony and the DOT, because as the VE explained, the DOT does not address sit/stand options. Tr. 88-91. See, e.g., Melvin v. Astrue, 2010 WL 908495, at *4 (N.D. Miss. 2010) (unpublished) ("That the DOT does not specifically describe a 'sit/stand option' does not necessarily create an inherent conflict when the ALJ's determination of a plaintiff's RFC provides for the option.") (citations omitted). Here, the VE explained that the DOT did not cover sit/stand options, and thus the VE looked to the DOT narratives to determine whether anything in the jobs might require sitting or standing or that the

job must be seated or must be standing. Tr. 88-91. The VE also confirmed that the job numbers provided were not reduced to accommodate a sit/stand option. Tr. 91. The ALJ therefore properly relied on the VE's testimony, in which he explained how he determined whether a job could be performed with a sit/stand option, to support the step five finding. Tr. 29-30, 87-91.

Thus, the undersigned finds that substantial evidence supports the ALJ's reliance upon the VE's testimony in making his step five finding.

**Conclusion**

For the reasons stated above, the Commissioner's decision is hereby **REVERSED,** and the case is remanded for further proceedings consistent with this order. On remand, the ALJ is instructed to specifically address whether a medical expert is available in accordance with the Appeals Council's order. If the ALJ finds that a medical expert is available, the ALJ should "obtain evidence from a medical expert related to the nature and severity of and functional limitations resulting from the claimant's impairment (20 CFR 404.1513a(b)(2) and 416.913a(b)(2))." *See* Tr. 168.

**SO ORDERED,** this the 21st day of August, 2023.

/s/ Jane M. Virden
UNITED STATES MAGISTRATE JUDGE